**FIRST NATIONAL BANK, a National Banking Association of Elkhart, Indiana, Plaintiff,**

v.

**Jerry Noel HASTY, (Principal) Defendant,**

v.

**BRA–MAR TOOL DIVISION, MWA COMPANY, a/k/a Bra-Mar Tool Division, MWA Corporation, a/k/a Bra-Mar Tool Division, Superior Hone Corporation, Garnishee-Defendant.**

Civ. A. No. 5–71484.

United States District Court, E. D. Michigan, S. D.

May 27, 1976.

George E. Kuehn, Detroit, Mich., for plaintiff.

Geoffrey L. Smith, Detroit, Mich., for defendant.

MEMORANDUM OPINION AND ORDER

PHILIP PRATT, District Judge.

In 1974 the above-named plaintiff obtained a judgment against the principal defendant, Jerry Noel Hasty, in the amount of $82,358.44. This judgment was registered in this Court pursuant to 28 U.S.C. § 1963 on August 7, 1975. A series of writs then issued, directed to defendant's assets in the hands of the garnishee defendant, Bra-Mar Tool Division of MWA Company. This Court, on the defendant's motion, quashed

the first two writs for defective service. In a subsequent motion the defendant Hasty challenged the constitutional validity of the post-judgment garnishment procedures of M.C.L.A. § 600.4011 et seq., upon which the remaining writs of garnishment were premised. In a Memorandum Opinion filed March 22, 1976, 410 F.Supp. 482 (D.C.) this Court rejected the defendant's challenges and found that the state post-judgment garnishment procedures were constitutionally proper under the Due Process Clause of the Fourteenth Amendment and denied defendant's motion to quash the remaining writs of garnishment.

The only remaining issues in this garnishment action are whether alimony and child support payments should be included in the principal defendant's "disposable earnings" when computing the amount of his wages which may be garnished under applicable Michigan law and under the federal Consumer Credit Protection Act.[1]

## I.

Section 1677 of the Consumer Credit Protection Act states that:

> "This subchapter does not annul, alter, or affect, or exempt any person from complying with, the laws of any State (1) prohibiting garnishments or providing for more limited garnishments than are allowed under this subchapter, . . ."

The Courts have generally interpreted this provision to mean that where state and federal garnishment laws differ or are inconsistent, the courts are to apply the law which garnishes the lesser amount. Therefore, the threshold question here is whether the applicable Michigan garnishment law would allow garnishment of earnings including sums which must be paid out for court-ordered child support and alimony. For if the state law restricts or forbids garnishment of such designated earnings, it may be found to be more restrictive gar-

nishment relief than allowed under the federal act.

Under M.C.L.A. § 600.7511(4), alimony and child support payments ordered by a state court were exempted from earnings which could be garnished, under a Justice Court garnishment action. These exemptions were also made applicable to garnishment actions in Michigan circuit court under M.C.L.A. § 600.4031(2)(b).

However, in 1969 the Justice Courts were abolished in Michigan and § 7511 was repealed in 1974. M.C.L.A. § 600.4011 now provides for garnishment procedures applicable in either state circuit or district courts, and § 4031 has not subsequently been amended. The Court must reject the defendant's contention that because § 4031 was never amended to delete its reference to § 7511 that somehow the latter statutory exemptions live on. Its repeal must be considered absolute and the failure of the legislature to delete reference to it in § 4031 is obviously a legislative oversight and not a revitalization of § 7511 *sub silentio*.

■ The Court agrees with the plaintiff that the failure of the state legislature to include alimony and child support exemptions under the new statutory garnishment provisions more probably reflects its view that the Consumer Credit Protection Act with its limitation upon the extent of garnishable wages provides adequate protection for a principal defendant. Certainly if the Michigan legislature determines that alimony and child support payments should be exempted from garnishable wages it can so provide; but this Court concludes that it has not done so under the existing legislation.

## II.

The Court must, therefore, consider the second and remaining issue raised by the parties, i. e., whether the federal statute prohibits garnishment of wages earmarked

---

1. 15 U.S.C. §§ 1671 et seq. The parties agree that if such amounts are included in disposable income the amount which plaintiffs may garnish under the Act is approximately $1,500 per

year more than if such amounts are excluded from disposable income. This amount has been placed in escrow pending determination of this issue.

by court order for alimony and child support payments. Section 1672(b) of the Consumer Credit Protection Act reads as follows:

"The term 'disposable earnings' means that part of the earnings of any individual remaining after the deduction from those earnings of any amounts required by law to be withheld."

The maximum allowable garnishment under Section 1673(a) is based on the "aggregate disposable earnings of an individual for any workweek . . .," thus, a judgment debtor's disposable earnings must be accurately computed before a court may grant judgment on a writ of garnishment.

It is the principal defendant's position that alimony and child support payments required to be paid pursuant to court order are "amounts required by law to be withheld" under the statutory provision and that therefore these sums must be deducted from his earnings to arrive at his "disposable earnings." The defendant offers no authority for his position but relies primarily on the policy ground that wage garnishment is an unfavored procedure and where terms of exemption are ambiguous and heretofore unconstrued by courts or explained by statute, they should be liberally construed. The defendant asserts that the "required by law" provision should be interpreted to allow him a pro rata deduction for child support and alimony.

Likewise the plaintiff is unable to cite to any decision construing this particular provision but rather contends that it is implicit in the statutory framework that Congress did not intend court-ordered child support and alimony payments to be included in the phrase "required by law to be withheld."

The Court agrees with the parties that there appears to be no statutory, regulatory or decisional authority interpreting the scope of the contested language of § 1672(b), although the problem facing the Court has been foreseen by several commentators.[2] The issue, then, is one of first impression in the federal courts and the Court must necessarily interpret the statutory clause to resolve this issue. In doing so this Court can seek guidance from a recent decision of the Supreme Court in *Kokoszka v. Belford,* 417 U.S. 642, 650, 94 S.Ct. 2431, 2436, 41 L.Ed.2d 374 (1974) wherein it reaffirmed the rule that:

"When 'interpreting a statute, the court will not look merely to a particular clause in which general words may be used, but will take in connection with it the whole statute . . . and the objects and policy of the law, as indicated by its various provisions, and give to it such a construction as will carry into execution the will of the Legislature . . . .' *Brown v. Duchesne,* 19 How. 183, 194, 15 L.Ed. 595 (1857)."

A comprehensive treatment of the legislative history of the Consumer Credit Protection Act is found in *Hodgson v. Cleveland Municipal Court,* 326 F.Supp. 419 (N.D. Ohio 1971), 14 ALR Fed. 419. It suffices here to point out that Congress was reacting to a close correlation between harsh state garnishment laws and the filing of an ever-increasing number of personal bankruptcies by individuals unable to cope with their debts. It, therefore, set a 25% ceiling on that portion of an individual's disposable earnings which could be garnished. It concluded implicitly, if not explicitly, that 75% of an individual's wages or earnings must be protected, to cover his and his families' basic living expenses so as to mitigate the personal bankruptcy problem.

Although the Court finds some merit in the policy ground advanced by the defendant, it concludes that several countervailing policies are paramount and require a narrower interpretation of the statutory clause than that proffered by the defendant.

### A.

■ A general rule of statutory interpretation is that words should be given their

---

2. *See* Speidel, Summers & White, Teaching Materials on Commercial and Consumer Law, 555 (2d Ed. 1974), (Question D).

normal and expected meaning. Yet it would appear to this Court that the defendant's interpretation would inordinately strain the rule in several respects. First, the defendant argues that "required by law" encompasses court orders, since the courts decide the law and compliance with a court order is required under threat of serious sanctions. But § 1673(b) explicitly refers to court orders when it excepts from the restrictions of § 1673(a), " . . . any order of any court for the support of any person." The thrust of that exemption is that in states where the garnishment device may be utilized to secure alimony or child support payments, those dependents will not be hampered by the ceiling on amounts garnishable under § 1673(a).[3] However, the importance of that provision in this discussion is that it indicated that when Congress *meant* to refer to orders of a court it did so clearly and explicitly and not through such language as "required by law."

The defendant's position that alimony and child support payments are amounts *required by law* to be *withheld* is also questionable. Alimony and child support are not necessarily (and perhaps not even normally) "withheld" as such. In many states the courts order the individual to pay such amounts to a specific account or to the ultimate beneficiaries. But in either case the payments are made directly by the individual; they are not withheld as are federal, state and local income taxes, or social security, all of which are unquestionably within the purview of § 1672(b).

### B.

The Court is quite troubled by one obvious consequence of the defendant's interpretation of § 1672(b). To allow an individual a deduction or exemption for court-ordered alimony or child-support payments would establish a preference for divorced persons over married or separated individuals. The legislative intent of the Act is

that 75% of disposable earnings are to be left to cover normal living expenses. These must, in the case of the married debtor, necessarily cover those expenses incurred in the care of his dependents. If the defendant's position were accepted, it would allow a divorced person with alimony and/or child support payments greater post-garnishment earnings than either a married individual or one who was separated but not legally divorced. The Court can find no rationale for treating these classes of persons differently. Alimony and child support payments are in lieu of the normal expenses incurred for dependent care when the family is unified. Even more compelling is the plight of the separated spouse who may be contractually obligated to support minor children staying with the other spouse, under a formal or informal agreement, but who is not doing so subject to a "court order." That individual may well incur the same expenses for dependent care, but under the defendant's position, he could not avail himself of the § 1672 deduction. It is conceivable that such a distinction would even raise serious constitutional questions, but without considering that issue this Court can find no justification for such a preference in favor of divorced individuals.

### C.

Equally as troubling is the effect the defendant's interpretation would have in the course of judicial administration. For if court orders relating to alimony and child support are considered deductible under § 1672, other court orders requiring the payment of money could logically be exempt from garnishment as well. Thus, a hierarchy of creditor priority in securing actual payment could arise which could well hamper the proper collection of debts through the garnishment procedure and at the same time defeat or frustrate the purpose of the Consumer Credit Protection Act.

---

3. For jurisdictions which have allowed enforcement of accrued alimony and child support payments by garnishment, see 56 ALR 841. Michigan, however, does not allow the garnishment device to be employed to enforce such

payments. *See Toth v. Toth,* 242 Mich. 23, 217 N.W. 913, 56 ALR 839; *Helm v. Helm,* 17 Mich.App. 246, 169 N.W.2d 137 (1969); 4 *Honigman and Hawkins,* Mich. Court Rules Annotated, Rule 738, p. 609.

### D.

Finally, the Court notes that alimony and child support are peculiarly state-controlled matters. Procedures, grounds, and even the predisposition of the courts in granting such support vary from state to state. In contrast to the good faith and credit given by one state to a divorce decree of another state, determinations concerning alimony and child support may be collaterally attacked. Considering the essentially local nature of such relief and the variance in its requirements and dispensation, this Court concludes that it would be highly inconsistent for a federal statute, which is intended to install uniform national standards, to be interpreted in such a way that the extent of the garnishment remedy would vary from locality to locality.[4]

For the reasons given above this Court concludes that the intent and purpose of the Consumer Credit Protection Act is best served if § 1672(b) is read narrowly and must reject the defendant's position that alimony and child support payments, even if ordered by a court, are "amounts required by law to be withheld." Thus, the disputed earnings allocated to alimony and child support must be included in the principal defendant's "disposable earnings" and any proper writs of garnishment will be premised on that amount. Judgment will be granted in accordance with the restrictions and provisions of the Consumer Credit Protection Act as interpreted above.

It is so ordered.

---

4. The Court is aware that it appears inconsistent for the federal statute to be interpreted to provide uniform national standards while at the same time allowing a state to depart from such uniform standards by legislatively exempting alimony or other similar sums from garnishment (as the Court noted above could be done by the Michigan legislature). If this is an inconsistency, it is one which is derived from the very fabric of the statute, and must be corrected, if that is deemed necessary, by legislative amendment than by judicial construction.